Mary B. Lyon et al., as Executors, etc., Appellants, *v.* Charles W. Hersey et al., Respondents.

While no particular form of words is necessary to create a limitation or condition, it is essential that the intention to create them should be clearly expressed in some words importing *ex vi termini* that the vesting or continuance of the estate or interest is to depend upon a contingency provided for.

L. died seized of a tract of land in L. county and of an interest in certain tannery property. His will gave to his executors power to sell the real estate. They entered into a contract with the firm of C. J. L. & Co. for the sale to that firm of all the hemlock bark upon the tract. The contract, after stating that the tract was in the vicinity of the tannery, contained this clause : " Said bark to be used there in carrying said tannery on." The contract provided that the vendees should pay a price specified for the bark, to be paid before its removal from the land, the bark to remain the property of the estate until paid for. The vendees were to cut not over a specified number of cords per year and were authorized to

enter upon the land, to fell and cure said bark and remove it in the usual way. Said vendees entered upon the performance of their contract, and they and defendants, their assignees, continued to take and use the bark in the tannery until it was destroyed by fire. Before this the tannery property had been sold on a partition sale, and one of the defendants became the owner. Defendants owned another tannery in the vicinity, and, after notice from plaintiffs claiming a right to terminate the contract, and that they elected so to do, they continued to cut bark with the avowed purpose of using it in the other tannery. In an action to annul the contract, to restrain such use, and to determine the ownership of the bark cut and not removed from the tract, *held*, that the words quoted created neither a limitation nor a condition; and that the action was not maintainable.

*Thomas* v. *Oakley* (18 Ves. 184), *Groat* v. *Rock* (94 N. Y. 115), distinguished.

(Argued June 16, 1886; decided October 5, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made January 13, 1885, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*C. D. Adams* for appellants. The expression in the contract "said bark" (from Brantingham lots) "to be used there in carrying said tannery on," is a limitation and not a condition; the executors could not make a condition under the power, as owners might. (Girard on Titles [2d ed.], 124.) The suit is to declare the contract at an end by force of the limitation; and terminated May 15, 1883, when Moose River tannery was destroyed; also for an injunction. (44 N. Y. 489; 70 id. 247.) It is a proper action for this relief. (Willard's Eq. Jur. 303; 73 N. Y. 516–524, 18 Ves. 184; 6 Johns. Ch. 497; 2 Story's Eq. 929; 14 Abb. [N. S.] 266; 24 Hun, 384; High on Injunctions [1st ed.], § 727.) The defendants cannot only be enjoined from committing further waste or trespass on, or injury to the premises, but the court can, as an incidental to the action, make them pay for the bark peeled since May 15, 1883;

or appoint a receiver to take and sell the bark pending the action; especially so, as Hersey is insolvent, and Mullen is not a *bona fide* owner, only a trustee. (5 Barb. 488; 11 id. 601.) If the executors had given a deed of this bark. using the same language, no effect could be given to the language, except as a limitation. The executors, under the power, could not make a valid condition subsequent in favor of the owners. (Girard on Titles [2d ed.], 124; 53 N. Y. 85, 92; Willard on Real Estate, 102, 520; 4 Kent's Com. 126, 127; 5 Seld. 35; 44 N. Y. 489; 70 id. 247.) As wrong-doers the defendants in this action are liable for the value of the peeled bark on the premises when this action was begun. (18 Ves. 184; 6 Johns. Ch. 497; 14 Abb. [N. S.] 266; 3 Comst. 379; 14 Barb. 638; 2 Abb. Dig. 516; 9 Hun, 571.)

*Francis Kernan* for respondents. The contract does not limit the use of the bark to carrying on the tanning business in the old tannery building. If that building is destroyed, the bark may be used in carrying on the tanning business in another tannery building owned by the holder of the contract, and situated in the same place or village, and on the same side of the river as the old. (2 Kent's Comm., p. 556; *Cromwell* v. *Selden*, 3 Comst. 253, 256; *Wakely* v. *Donaldson*, 26 N. Y. 394; *Olmstead* v. *Loomis*, 9 id. 424, 427; *Fisk* v. *Wilber*, 7 Barb. 395, 402, 403, 404.) The intent of the parties to a contract is to be ascertained not only by the language employed, but by the surrounding circumstances and the subject-matter, and the intent of the parties as thus ascertained is to prevail. (*Hasbrook* v. *Paddock*, 1 Barb. 635, 636, 637; *French* v. *Carhart*, 1 Comst. 96; *Bancroft* v. *Wenspeer*, 44 Barb. 211; *Blossom* v. *Griffin*, 3 Kern. 569; *Springstein* v. *Samson*, 32 N. Y. 703.)

Ruger, Ch. J. The complaint in this action was framed to procure a decree, annulling an executory contract between certain of the plaintiffs, as executors of the estate of Lyman R. Lyon, vendors, and the firm of C. J. Lyon & Co. as vendees for the sale of the hemlock bark on the Brantingham tract in

Lewis county, and to determine the ownership of that portion of such bark as was then cut, but not removed from the premises. The action is based upon the claim that the destruction of the Moose River tannery, rendered the performance by the vendees of an alleged implied agreement, to use it therein impossible, and, therefore, that the title to such bark, as then remained unused, reverted to the owners of the land. The question arises under a clause in the contract following the description of the premises upon which the bark was grown reading as follows : " Said lots being in the vicinity of Moose River tannery, said bark *to be used there in carrying said tannery on.*" At the date of the contract in January, 1871, some of the plaintiffs were the owners as trustees under the will of Lyman R. Lyon, of an undivided three-eighths of said tannery, and Chester J. Lyon, also an executor, was the owner of the remaining five-eighths, the whole consisting of a tannery and about one thousand acres of land. The said executors were also trustees, with power of sale under the will of Lyman R. Lyon, of the Brantingham tract, upon which there was then growing about thirty thousand cords of bark. The contract provided, among other things, that " For the aforesaid bark on the tree, second parties agree to pay first parties fifty cents per cord, said bark to be paid for before removed from the land, unless otherwise satisfactorily arranged, and to remain the property of the estate until paid for." " The second party are not to cut more than three thousand cords on the Brantingham tract per year," and are " to have the right and privilege to enter upon said lands to fell and cure said bark and remove the same as is usually done by tanners."

The vendees after its execution immediately entered upon the performance of the contract, and by themselves and defendants, their assignees, continued to cut, peel and draw away bark in each year for use in the Moose River tannery until May 15, 1883, when the tannery building was accidentally destroyed by fire. There then remained about six thousand cords of bark uncut on the described premises. On June 12, 1883, the plaintiffs served a written notice upon the defendants, claiming the

right to terminate the contract by reason of the destruction of such tannery.

The customary period for cutting bark extends from June first to August first in each year, after which it is piled in the forest for curing, and remains there until snow falls, when it is drawn to market for use the following season. If kept over the season its strength deteriorates, and its value becomes diminished. It was customary for parties buying bark to make contracts for cutting and piling it as early as April or May, and in the present case it was proved that the defendants, had entered into such contracts at that time. They had thus, in good faith, incurred a large liability in the performance of their obligation to buy the bark, before any question arose as to their right to cut and carry it away. The work of stripping the bark in question commenced about the first of June, and had continued nearly two weeks before the vendors attempted either to put an end to the contract, or to repossess themselves of the bark cut. On the first of August upward of two thousand five hundred cords of bark had been cut and piled upon the ground ready for the curing process, at an expense to the vendees of several thousand dollars.

In the year 1879, by virtue of a sale in partition of the Moose River tannery property, the interest of the plaintiffs therein had become divested, and the defendants, or some of them as purchasers on such sale, became the owners thereof and have ever since retained such ownership. The defendants, or some of them, also became the owners in 1879 of a large tract of land with a tannery thereon adjoining the Moose River tannery property and prosecuted the business of tanning in both of said tanneries, up to the time of the destruction of the latter tannery. Previous to the commencement of this action the defendants had claimed that the destruction of the Moose River tannery did not annul their contract, and that they had the right under it, to cut bark on the Brantingham tract for use in other places than the Moose River tannery. The plaintiffs on the contrary claimed that the destruction of the tannery *ipso facto* annulled the contract and that thereby they became invested

with the title and entitled to the possession of all bark uncut, and to recover possession of such as remained unremoved therefrom, and the logical effect of their contention would include all bark unused, which had been previously paid for and removed from the premises by the vendees.

In discussing the questions presented, it will tend to obviate the confusion produced by some misleading analogies, if we eliminate therefrom the consideration of the cases cited, relating to exceptions and reservations in conveyances, since for obvious and well-recognized reasons, the language of this contract creates neither of those forms of estates. (*Craig* v. *Wells*, 11 N. Y. 315.) The appellants' claim, if at all tenable, can be supported only by demonstrating that the clause in question created either a condition or a limitation.

We do not consider it very material whether it is one or the other, since, if either, it would terminate the defendants' interest, and the same result would be attained. If a condition, it must necessarily be a condition subsequent, for it could only be called into operation after the possession and title of the property had changed, and a diversion of its use by its vendees to a prohibited purpose, had been attempted. (Bouv. Ins., § 743.) Counsel on the argument, on both sides, treated the provision as creating a limitation alone, but we are unable to agree with them and can see in it none of the qualities of such an estate.

The difference between a limitation, and a condition, is defined to be, that in order to defeat the estate in the latter case, it requires some act to be done, such as making an entry, to effect it, while in the former, the happening of the event is, in itself, the limit beyond which the estate no longer exists, but it is determined by the operation of the law without requiring any act to be done by any one. (2 Wash. on Real Prop. 20.) It is also said that a condition brings the estate back to the grantor or his heirs—a conditional limitation carries it over to a stranger. The grantor or his heirs alone having the right to defeat the estate, by entry for condition broken. A condition terminates an estate, a limitation creates a new one. (2 Wash. 22.)

The attempt is here made after an absolute grant of the bark to cause the remaining bark, to revert to the owners of the land in accordance with the rule governing broken conditions, instead of carrying it over to the new estate as a limitation requires. Even if such a rule could be applied, it would affect only so much of the property as was used in violation of the condition, and could not relate to that which had not been taken in possession, and the right to which still rested in covenant. It is unnecessary, however, to pursue the distinctions and analogies between these different estates, as we are of the opinion that there is here neither condition nor limitation.

In the construction of all contracts under which forfeitures are claimed, it is the duty of the court to interpret them strictly in order to avoid such a result, for a forfeiture is not favored in the law. (Bouv. Ins., § 730 [1814]; *Duryea* v. *Mayor, etc.*, 62 N. Y. 594; *Lorillard* v. *Silver*, 36 id. 578.) While no particular form of words is necessary to create a limitation or condition, it is yet essential that the intention to create them shall be clearly expressed in some words importing *ex vi termini* that the vesting or continuance of the estate or interest is to depend upon a contingency provided for. (*Craig* v. *Wells*, 11 N. Y. 315; Bouv. Ins., § 753.)

It will be observed that there are in this contract no express words importing a limitation or condition, and if it is held to contain either, it must be inferred from some supposed intention of the parties drawn from other provisions in the contract, or from the nature of the act provided for, or the circumstances surrounding the subject of the agreement. These are all legitimate sources of information from which to derive an understanding as to the intent of the parties, and may properly be resorted to for that purpose. (*Barrusc* v. *Madan*, 2 Johns. 145; *Cunningham* v. *Morrell*, 10 id. 203.) It is also said that the ordinary technical words by which a limitation is expressed relate to time, and are *durante, dum, donec*, etc.; but that the use of any of these terms ordinarily expressive of a condition or a limitation would be an unsafe test of the true nature of the estate. The word " proviso,' or " provided " itself may

sometimes be taken as a condition, sometimes as a limitation and sometimes as a covenant. (2 Wash. 21.)

It would seem to be quite clear that the object designed to be secured by the insertion of the clause in question was to provide for the continuous employment of the tannery in the business of tanning, and was adopted mainly, if not altogether, for the benefit of the vendors, or the owners of the tannery property. No limit is assigned for the duration of the estate or the quantity sold. It is all of the bark on the Brantingham tract, to be taken in quantities not exceeding three thousand cords per year. The period during which the right was to extend was unlimited and could not be less than ten years, and might be extended for an indefinite term. The vendors were the owners of a large portion of the tannery property, and had a material interest in giving it continuous employment, and thus adding to its value, while the vendees would not seem to have any object in restricting their own control over the property purchased. We cannot, therefore, assent to the interpretation that the object of the parties would be satisfied by the use of the bark in the vicinity of the tannery referred to. The real question, therefore, is whether that object was intended to be secured by a limitation or by a covenant.

The language of the contract is " said bark to be used there in carrying said tannery on." If any contingency is here expressed as one upon which a right depends, it cannot be one other than a use contrary to the one pointed out. The plaintiffs have assumed that the destruction of the tannery; as matter of law, rendered the use of the bark therein impossible, and, therefore, *ipso facto* terminated the defendants' rights under the contract.

This contention cannot be sustained. There is nothing in the case to show that the defendants did not intend to rebuild the tannery, and nothing to preclude them from doing so and using the bark in the renovated structure. An interpretation which should confine the use of the bark to the particular building existing in 1871, would be unreasonable and motiveless, as no object of the vendors could be served by such a use which

would not be equally promoted by its employment in another building of similar capacity in the same location. Neither did the expressed intention of the vendees to use the bark in another locality set in operation the limitation, if one existed, or authorize the vendors to consider the contract at an end. In order to have such an effect, the notice must be of an intention not to perform some act amounting to a condition precedent, and this we have seen is not such a condition. (*Bogardus* v. *N. Y. Life Ins. Co.*, 101 N. Y. 328.)

We, therefore, return to a consideration of the event, if any, which the parties had in mind as a limitation in framing their contract. As we have said, there is nothing indicating an intention to limit the duration of the estate or the quantity sold, the words importing simply a restriction of the use to be made of the bark. The language imports that its actual use at a place other than the one prescribed, should be the event upon which, the claim in question should have its operation, and there is nothing in the circumstances of the case tending to show any other intention. Such a use would necessarily destroy the subject of the contract, or deprive it of its merchantable value, and render its ownership after that event a matter of no importance. It cannot, therefore, be reasonably contended that such a contingency would be regarded by its vendors, as a desirable occasion for its reclamation, or the right of its possession after that time as a profitable thing to be secured. Long before this contingency could occur it was provided that the vendees should pay for the bark, and become entitled to its ownership and possession, and there is nothing in the language of the contract or the circumstances of the case, to show that the vendors entertained any expectation that their interest in the property would survive the transfer of the title. The contract provided for the sale of all of the bark on the Brantingham tract, and express provision is made for the retention of the title and possession as security for the purchase-price, but no language indicates an intention to reserve it for any other purpose.

The pecuniary interest of the vendors in the improved

property was slight, as compared with that of the vendees, and in the absence of language plainly expressing such an intention, it is not reasonable to impute to them a design to subject it to ·a forfeiture, after it had been made valuable almost wholly by their expenditures upon it.

Neither can it be reasonably claimed that the parties contemplated that bark cut, paid for and drawn to the tannery in ·strict conformity to the contract, before its destruction, should by that event be forfeited to the vendors, however great the lapse of time which should follow thereafter.

In view of all the circumstances we must, therefore, hold that the parties intended by the clause in question only such security as a covenant afforded for the performance of the stipulation in question.

The case of *Thomas v. Oakley* (18 Vesey, 184), cited by the plaintiffs has no application. There the owner of a quarry sold so much of the stone therefrom as was -needed for " all the purposes of Newton farm." This language is descriptive merely, and constitutes the only definition of the property intended to be sold, and it was properly held that the vendees acquired no right to stone to be used for other purposes than Newton farm. In the present case, however, the right to take all of the bark on the Brantingham tract was contracted for, and the only limitation of quantity was that contained in the proviso restraining the right to peel, to three thousand cords a year.

*Groat v. Moak* (94 N. Y. 115) was a case arising under a *reservation* in a grant of water power, and is obviously inapplicable to this case.

The case of *Craig v. Wells* (11 N. Y. 315) seems to us quite decisive of the questions raised here. There a water power was granted with a prohibition against its use for any other purposes than those specified in the deed. It was held that the language of the grant did not constitute either a condition, limitation, reservation or exception, although, if construed in connection with certain bonds executed therewith, it was said that a covenant might be implied from a considera-

tion of the several instruments simultaneously executed. SELDEN, J., says in relation to the language then under consideration, that "it is a mere limitation of the use which the grantees shall make of the thing granted — a naked prohibition. No right to the use of the water is saved to the grantor. This prohibition is inconsistent with the title conveyed by the deed and is clearly void. If one conveys land in fee-simple, and neither excepts any part, nor reserves any thing to himself out of it, but restricts the grantee to a particular use of the land, the restriction is void, as repugnant to the proprietary rights of an owner in fee. Such a restriction may be imposed and would be good as a condition or a covenant, but in no other form." See, also, *Congregation Shaaer Hash Moin* v. *Halladay*, 50 N. Y. 664.)

It is claimed by the respondents that the subsequent acquisition of the Moose River tannery by the vendees in the contract deprived the plaintiffs of any interest in the performance of the stipulation in question, and amounted to a surrender of their right to insist upon its performance. We think, however, that a subsequent change in the condition of the parties did not reflect any light upon the intention existing in regard to it at the time of its execution, and, therefore, has no bearing upon its interpretation. If the clause in question be regarded as a covenant, such change might affect the damages, if any, recoverable for a breach therefor; but in the absence of an express agreement to affect a modification, would not have any other effect.

The judgment should be affirmed, with costs.

All concur, except RAPALLO, J., not voting.

Judgment affirmed.