747 So. Blvd. Realty Corp., Landlord, *v.* Wein-Rose, Inc., Tenant.

Municipal Court of the City of New York, Borough of The Bronx, July 27, 1951.

*Mark L. Giller* for landlord.

*Nathan Hirschberg* for tenant.

LORETO, J. This is a holdover proceeding relating to business space located in the city of New York.

The landlord premises this eviction on an asserted termination of the written lease between the parties by reason of written notice given pursuant to its terms. The lease is for a term of five years commencing June 1, 1949, and ending May 31, 1954, with an option to the tenant to extend the term for an additional five years.

The evidence discloses that as a result of the hurricane which occurred in the month of November, 1950, the plate glass and window frames of the demised premises were extensively damaged. The failure of the tenant to repair that damage has given rise to this proceeding as well as other litigation between the parties which will be presently mentioned.

Soon after the occurrence of the damage the landlord made demand upon the tenant to make those repairs, charging the tenant with that obligation by virtue of the lease. The tenant disclaimed any such duty. The landlord thereupon made the repairs and completed them on February 2, 1951. Shortly thereafter the tenant instituted a proceeding in the Supreme Court for a declaratory judgment pursuant to section 473 of the Civil Practice Act to declare whether the landlord or the tenant pur-

suant to the terms of the lease "has the obligation of making the exterior repairs to the store front upon the demand of the landlord ". It is unnecessary for this court either to consider the provisions of the lease bearing on the respective rights and duties of the parties in that regard or to pass upon that issue. It is sufficient merely to note that the Supreme Court rendered its decision and decree therein to the effect that it was not the obligation of the landlord but of the tenant to make the exterior repairs to the store front on the demand of the landlord. The parties acknowledge the binding force upon them of that decree.

It appears that a prior holdover proceeding was brought by the landlord based on the tenant's failure to make the aforesaid repairs after written notice. That proceeding resulted in a decision which merely recites that the proceeding was dismissed during trial.

In all respects except the allegation as to the written notice served of terminating the lease, the petition in the instant proceeding is the same as that in the prior holdover proceeding. This petition alleges a different and later notice terminating the lease.

The tenant has raised two defenses by its written answer, one the plea of res judicata and another the assertion of the invalidity of the notice to terminate.

The first defense of res judicata is overruled. It is clear that the instant proceeding is based upon an additional fact occurring after the institution and trial of the prior proceeding, i.e., the new and subsequent notice electing to terminate the tenancy (*Apostolic Faith Rescue Mission* v. *Slipyan*, 194 Misc. 666).

As to the second defense urging the invalidity of the notice given, it appears that it was given by the attorney for the landlord, not indicating his authority nor reciting that it was given on behalf of the landlord. In *Matter of Lendon Realty Corp. (Weber)* (193 Misc. 120) it was held that in the absence of a provision in the lease authorizing the landlord's attorney to give the notice of termination, it is ineffective. This court will follow that holding. The testimony offered on the trial to prove such authority given to the landlord's attorney, was unavailing to cure the notice. It was ineffective when served and could not be cured *nunc pro tunc* upon the trial.

However, apart from the technical defect of the notice, the court is of the opinion that the landlord can no longer successfully claim a termination of the lease based on the aforesaid violation. It appears that immediately after and since the

Supreme Court adjudged that it was the obligation of the tenant to make the repairs in question, the tenant has offered to indemnify the landlord in full for their cost.

The landlord in rejecting this offer has made clear that it is interested primarily in securing possession rather than indemnification. The former, it may not have, in view of the facts in this case.

For breach of the provision of the lease imposing upon the tenant the duty to make repairs, it may be cast in damages. However, without more, it does not thereby suffer a forfeiture of the lease. Under its provisions, to effect such a result the landlord is required to take specific action. The landlord must give the written notice as provided in the lease. Paragraph 17th thereof reads: " It is expressly understood and agreed that * * * if default be made in the performance of any of the covenants and agreements in this lease contained on the part of the tenant to be kept performed, * * * the landlord may if the landlord so elects, at any time thereafter terminate this lease and the term hereof, on giving to the tenant five days' notice in writing of the landlord's intention so to do, and this lease and the term hereof, shall expire and come to an end on the date fixed in such notice as if the said date were the date originally fixed in this lease for the expiration hereof."

Due and proper notice of termination so stipulated the landlord has not given and cannot give.

The difficulty with the landlord's position is that by its own action in making the repairs it has precluded the tenant from later being able to make them. The motives of the one in acting and the other in not acting in that respect are beside the point. Since the making of the repairs by the landlord, the tenant has offered to satisfy the landlord to the extent of all moneys expended therefor. More, in justice, the landlord could not seek nor obtain. The breach of the provision of the lease regarding repairs, in itself, did not work a termination of the lease. The landlord could no longer ask for the repairs to be made—an utter impossibility. All he is entitled to is to be made whole. This the tenant has stood ready to do. Therefore, any notice directing the tenant to cure the violation at the risk of forfeiting the lease would perforce be unavailing.

Nor is there any merit to the argument of the landlord's attorney that the refusal of the tenant to make the repairs was willful and therefore constitutes an anticipatory breach of lease terminating it. The principle of "anticipatory breach" does

not apply. The lease having come into effect and both parties having partially performed their respective obligations thereunder, the tenant's refusal to comply with one of its stipulations during its term clearly cannot be considered an "anticipatory" breach of lease.

Insofar as the duty to repair is concerned, whether the tenant's stand was deliberate and willful or negligent is immaterial. The measure of its duty is contractual and fixed. There is no express stipulation to the effect that the tenant will suffer any greater risk or penalty in the event it willfully refuses to perform that obligation than if it negligently omitted to do so. Nor can any such condition be implied. On the contrary the written lease will be strictly construed against its author and especially is that the rule where a forfeiture is invoked as here.

The petition is accordingly dismissed.