Sidney H. Asch, J.
This is a summary proceeding brought to dispossess the tenant and others in possession of premises known as 2966-8 Third Avenue and 657-9 Bergen Avenue, The Bronx, New York.
The essential allegations of the landlord’s petition are that the tenant has permitted violations to be placed against the premises and has refused to remedy and remove the same. The landlord further alleges that it served a notice terminating the lease upon the latter’s failure to comply with obligations under the lease with respect to curing violations. Both on the facts and the law, the landlord cannot succeed in its position.
The tenant concedes that there was a violation dated April 5, 1963, placed on the premises by the Department of Buildings, and that the Fire Department, by order dated July 23, 1963, required the installation of sprinklers. It concedes further, that on August 16, 1963, the landlord wrote to the tenant by registered mail, stating in part: “ Upon your failure to remedy these violations by September 10, 1963, the landlord elects to terminate your lease of these premises on September 10, 1963.” The violation of the Department of Buildings was remedied on September 3, 1963, and a copy of the formal notice of removal of the violation was forwarded to the landlord on September 4, 1963, before the date specified in the landlord’s letter.
The sprinklers required by the Fire Department have not as yet been installed. However, on the facts, this is quite explainable. The uncontroverted testimony was that the tenant sought to install the sprinklers and consulted numerous contractors to this end. However, none of these contractors would undertake to do the job in the short space of time specified by the tenant in order to satisfy the landlord because they would have to prepare and file plans, wait until the plans were approved, etc.
The tenant finally consulted the firm of licensed architects for the purpose of having them take on the job. Mr. Harry Prince of that firm took the position that the tenant should apply to the New York City Board of Standards and Appeals to obtain a variance which would obviate the necessity for the installation of sprinklers.
Mr. Prince was formerly president of the New York State Society of Architects and Deputy Commissioner of the Department of Buildings and Housing. The tenant retained the firm for the purpose of prosecuting such action. By letter dated August 27, 1963, the Fire Department advised the tenants that they could appeal to the Board of Standards and Appeals. The letter stated that it had 30 days from the date of the letter within which to appeal. Mr. Prince testified that he consulted the *350 Fire Department and on the basis of this decision he advised the tenant that no legal action would be taken by the Fire Department with respect to this order for at least 90 days after August 27, 1963, provided the necessary steps to bring this matter before the Board of Standards and Appeals have been taken. The Fire Department sent the tenants a new letter which advised the tenant that it had an additional 30-day extension of time from August 27, 1963, within which to appeal the order to the Board of Standards and Appeals.
On September 9,1963; an application was filed with the Board of Standards and Appeals to seek the variance. The matter was accepted by the Board of Standards and Appeals for consideration and the matter is under consideration by the board at the present time. The tenant has duly tendered its rent to the landlord and the landlord has refused to accept the rent.
The critical issue resolves around paragraph 21 of the lease between the parties. It provides as follows: 11 The building or buildings and improvements now standing on the demised premises and any and all buildings and improvements which may be erected or placed thereon at any time during the term of this lease shall be kept by the Lessee in good and substantial order and repair outside and inside at its sole cost and expense, and the Lessee will comply with all the orders, regulations, rules and requirements of every kind and nature relating to the premises, now or hereafter in effect, of the federal, state, municipal, or other governmental authorities and of the New York Board of Fire Underwriters and the New York Fire Insurance Exchange whether they be usual or unusual, ordinary or extraordinary, and whether they or any of them relate to structural changes or requirements of whatever nature, or to changes or requirements incident to, or as the result of any, use or occupation thereof or otherwise, and the Lessee will pay all costs and expenses incidental to such compliance, and will indemnify and save harmless the Lessor from all expenses, and/or damages by reason of any notices, orders, violations or penalties filed against or imposed upon the premises, or against the Lessor as owner thereof, because of the failure of the Lessee to comply with this covenant. The Lessee shall have the right to contest or review any order issued against the premises by legal proceedings or in such other manner as it may deem advisable, and may have any such order, rule, violation, requirement or notice cancelled, removed or revoked without actual compliance therewith, and if any actions or proceedings are instituted, they shall be instituted and conducted promptly at the expense of the Lessee and free of expense to the Lessor, and *351 if as a result of any such proceedings any order, regulation, rule, violation, requirement or notice is modified or partially revoked or cancelled, the Lessee shall then be obligated to comply only with such part thereof which shall remain in force and effect. The term ‘ legal proceedings ’ as used herein shall be construed as including appeals from judgments, decrees or orders and certiorari proceedings and appeals from orders therein. If and whenever any such order shall become final and binding, after contest thereof, the Lessee shall then comply therewith with due diligence, and in default thereof the Lessor may comply therewith and the cost and expense of so doing may be paid by the Lessor and/or may be charged against the Lessee as additional rent, becoming due on the next rent day or upon any subsequent rent day and shall be due and payable by the Lessee as such, and the Lessor shall have recourse to all the remedies herein conferred upon the Lessor in respect to the collection of rent or to the recovery of the possession of the demised premises because of a default in the payment of rent. ’ ’
It should be noted that the tenant is authorized “ to contest or review any order issued against the premises by legal proceedings or in such other manner as it may deem advisable ”. The argument of the landlord that the tenant’s application is not an il appeal ” is without substance. The word “ appeal ” only appears in the explanation of the word “ legal proceedings ” as “ inclusive ” of appeals from judgments, decrees, or orders. Under the paragraph any proceedings deemed advisable might be instituted by the tenant not only appeals. Furthermore, the Board of Standards and Appeals, itself, characterized the application pending before it, an “ appeal.” The principal argument of the landlord is that the tenant did not act promptly or in good faith. But a bare recital of the facts, in chronological sequence, the testimony of the witnesses and the documents in evidence, militate against the contentions of the landlord.
Tenant has raised certain objections in law to the position of the landlord. It is not necessary to go into the tenant’s contention that the petition of the landlord is defective. It raises a more serious objection based upon paragraph 10 of the lease. That paragraph provides in part: “ the lessor shall have the right to terminate and end this lease and the term hereby granted, as well as all of the right, title and interest of the lessee hereunder, by giving the lessee twenty (20) days’ notice in writing * * *; and it is agreed that, upon the expiration of the time fixed in such notice, if the said * * * default, or other cause of termination specified in such notice, shall not *352 have been made good, or removed, this lease and the term hereby granted, as well as all of the right, title and interest of the lessee hereunder, shall, at the option of the lessor, wholly cease and expire, in the same manner, and with the same force and effect * * * as if the expiration of time in such notice were the end of the term herein originally demised” (italics added).
This provision, permitting termination by notice, is a condition rather than a conditional limitation. Even if the termination were justified, the landlord would have to proceed by way of ejectment rather than by summary proceedings. What the landlord has attempted to do here is to create a forfeiture of the lease. It is a well-known canon of law that the courts do not favor such forfeitures. No forfeiture was effected in this instance.
The language in some recent decisions is most significant. For example, in Schnitzer v. Fruehauf Trailer Co. (283 App. Div. 421, 432, affd. 307 N. Y. 876) the court in quoting from and adopting the language in United States Mach. Co. v. International Metals Development (74 Cal. App. 2d 5, 14) said: “ Forfeitures are abhorent to the law and will not be declared if there is any other reasonable theory upon which a case can be settled.”
Principles of equity and reason, as well, preclude a highly technical interpretation which would result in depriving a party of his property. This rule has been enunciated frequently. In Industrial Development Foundation of Auburn v. United States Hoffman Mach. Corp. (11 Misc 2d 625, 637, affd. 8 A D 2d 579), the court said: “It is true that forfeitures are not favored in the law, and where a contract is capable of different constructions, it will be construed strictly in order to avoid such a forfeiture. (Baley v. Homestead Fire Ins. Co., 80 N. Y. 21; Lyon v. Hersey, 103 N. Y. 264.) It is also true that as a general rule equity will not act to enforce a forfeiture. ’ ’
In Rockaway Park Series Corp. v. Hollis Automotive Corp. (206 Misc. 955, 957, affd. 285 App. Div. 1140), the court said: “ Courts of equity frown upon the principle of forfeiture. As the keeper of the conscience of the king, equity will ameliorate the harshness of the full application of legal forfeitures, when, in a given case, justice demands such action.” And on the same page: “ To grant foreclosure would require equity to forsake benign principles rooted in moral and natural justice.”
In De Kay v. Board of Educ. of Cent. School Dist. No. 2 (20 Misc 2d 881) the court referred to the ease of Van de Bogert v. Reformed Dutch Church (128 Misc. 603) which quoted from *353 Lyon v. Hersey (supra) as follows: “ In the construction of all contracts under which forfeitures are claimed, it is the duty of the court to interpret them strictly, in order to avoid such a result, for a forfeiture is not favored in law.” .See, also, 747 So. Blvd. Realty Corp. v. Wein-Rose, Inc. (201 Misc. 552) where the court held that a written lease will be strictly construed against its author, especially where a forfeiture is invoked. Also, see, Paul Pleating & Stitching Co. v. Levine (137 Misc. 82, 85) where the court stated: “ The law does not favor forfeitures, and a party to a contract may by his conduct estop himself from enforcing the provision against a party who has acted in reliance upon such conduct. (Bishop v. Agricultural Insurance Co., 130 N. Y. 488.) ”
That forfeitures are not favored in equity and technicalities will not be permitted to work an injustice or oppression, is contained in many other decisions, such as 98 Delancey St. Corp. v. Barocas (82 N. Y. S. 2d 802, affd., 275 App. Div. 651); 6th Ave. & 24th St. Corp. v. Lyon (193 Misc. 186, affd. 275 App. Div. 651); Ettinger v. Canby Corp. (189 Misc. 235); Caspert v. Anderson Apts. (196 Misc. 555); Rockaway Park Series Corp. v. Hollis Automotive Corp. (supra); Obedin v. Masiello (20 Misc 2d 101).
Notice clauses of this nature have been before the courts on many occasions for interpretation as to whether such notice provision is a condition subsequent or a conditional limitation, and in the event that it presents a condition and not a limitation, the courts will not enforce a provision permitting summary proceedings since the parties cannot by agreement confer jurisdiction of the subject of the action. (2 Carmody, New York Practice, § 750; 1 Wait, New York Practice [4th ed.], § 12.) The court, may of its own motion, dismiss the action. (Patrone v. M. P. Howlett, Inc., 237 N. Y. 394.)
Where a lease term provides that a notice terminates the lease upon a specific date, it might well be construed as a limitation, but where another act is required, — i.e., the exercise of the option of the landlord to cause such termination, that additional act renders the provision ineffectual as a limitation. It is nothing more than a condition subsequent and a “ condition ” relegates the landlord to the common-law remedy of an action in ejectment, and not summary proceedings.
In Hayman v. Butler Bros. (196 Misc. 641) a similar lease provision was presented to the court under similar circumstances. Said the court (p. 643): “ On the decisive question as to whether this enforcement clause presents a condition subsequent, known simply as a ‘ condition ’, or a conditional limita *354 tion, called a ‘ limitation the distinction is well recognized. A ‘ condition ’ does not automatically terminate the lease upon the breach, hut permits the lease to continue until the landlord takes advantage of the breach; while a ‘ limitation ’ itself limits and terminates the lease upon the breach, without any further act by anybody. In other words, a 1 condition ’ ends the lease only when the landlord so elects and acts upon it; while a £ limitation ’ ends the lease automatically. With a £ condition ’, the only remedy is the common-law action of ejectment. With a ‘ limitation ’, the statutory summary proceeding is permitted. (8 Carmody on New York Practice, § 185; 2 McAdam on Landlord and Tenant [5th ed.], p. 1609; Lyon v. Hersey, 103 N. Y. 264; Riesenfeld, Inc. v. R-W Realty Co., 223 App. Div. 140; Burnee Corp. v. Uneeda Pure Orange Drink Co., 132 Misc. 435.) ”
In the instant case, as in the Hayman v. Butler Bros. case (supra) the enforcement clause did not provide that the lease shall terminate upon default and notice; nor upon continued default after notice. It really provided for termination ££ at the option of the landlord ” after default and notice. The landlord may not wish to terminate the lease, in which case it continues on after default and notice. It cannot be terminated merely by default, notice and subsequent lapse of time. It can be terminated only by default, notice, lapse of time and the landlord’s subsequent election to re-enter. The lease in this case clearly presents a condition, requiring the further acts of election and re-entry; not a limitation, which would automatically accelerate the term and end the lease. As a consequence, the landlord’s only remedy is ejectment, now known as an “ action to recover real property. ’ ’ .(See Riesenfeld, Inc. v. R-W Realty Co., supra; Goldberg v. Levine, 199 App. Div. 292; Davis Bros. Realty Corp. v. Harte, 195 App. Div. 403; Murray Realty Co. v. Regal Shoe Co., 265 N. Y. 332.)
There was a similar holding under similar circumstances involving a similar provision, in Ehret Holding Corp. v. Anderson Galleries (138 Misc. 722).
Accordingly, the petition is dismissed.