Samuel C. Coleman, J.
There has been a controversy of long standing between landlords and tenant. Landlords (two individuals) are the owners of two old-law tenement buildings and the tenant is in possession under a lease of the buildings which expires in 1968. The landlords have made unsuccessful efforts in the past to repossess the premises. The status of the litigation now is as follows: The tenant brought suit in this court to declare the lease in effect, and to enjoin the landlords from interfering with his possession and with the relations between him and the occupants of the several apartments. He brought summary proceedings in the Civil Court to evict one of the landlords who occupies an apartment in the buildings. In that action the landlords (the second individual landlord joining in the answer) counterclaimed, seeking possession of the premises. In the action brought in this court by the tenant, the landlords counterclaimed for damages for various breaches: nonpayment of rent, failure to make mortgage and other payments, failure to make repairs and to remove violations. Both actions were consolidated and are now before me.
*800 The suit by the lessee to declare the lease in effect and the cause of action in the Civil Court by the landlords in summary proceedings are correlative, and will be considered together.
It is the landlords’ position that the lease has come to an end by virtue of their exercise of an option to bring it to an end contained in the lease: “ if default be made in the payment of the rent or any part thereof as herein specified * * * or if default be made in the performance of any of the covenants and agreements in this lease contained on the part of the Tenant to be kept performed, or if the Tenant shall fail to comply with any of the * * * orders, regulations and requirements of the * * * City Government * * * the Landlord may, if the Landlord so elects, at any time thereafter terminate this lease and the term thereof on giving to the Tenant five days’ notice in writing of the Landlord’s intention so to do, and this lease and the term thereof shall expire and come to an end on the date fixed in such notice as if said date were the date originally fixed in this lease for the expiration thereof. Such notice may be given by mail to the Tenant addressed to the demised premises.” (Printed cl. 19.)
The landlords, by two letters, October 16, 1963, and October 28, 1963, gave what they believe to be adequate notice of their intention to terminate the lease; the tenant believes the notices inadequate. Before considering that difference in views, another question arises which should only be mentioned as the answer is immaterial. Both sides have spent a good deal of time and energy on it: Does the clause in the lease operate as ‘ ‘ a conditional limitation ”, or as a “ condition subsequent ’ ’ 1 I find it unnecessary to answer a question which has troubled many. For if the clause is a “ condition subsequent ”, the landlords have chosen the wrong remedy; they can only sue in ejectment, not by way of summary proceedings; and if it is a “ conditional limitation”, warranting summary proceedings (Beal Property Actions and Proceedings Law, § 711, subd. 1), they have not acted strictly in accordance with the lease in attempting to bring the term to an end; nor have they pleaded their cause of action properly.
I repeat that if the clause is a condition, the only remedy is for the landlords to sue in ejectment. They did not do so. Their claim that the lease was at an end is found in the counterclaim in the Civil Court action. The language of the counterclaim is difficult to understand. It makes no reference to a lease; it refers to an “ agreement ” (throughout the trial the landlords were reluctant to call the lease a “ lease ” — they insisted that it was “ a management agreement ”). But what *801 ever the pleading contained, it could not he a cause of action in ejectment. While the Civil Court may entertain an action in ejectment (or a counterclaim), it can do so only where the assessed valuation of the property does not exceed $10,000 (the annual rental under the lease was $6,000 — it could be increased to $7,000, and the lease contemplates mortgages exceeding $60,000). The demand for relief is such as would be proper only in summary proceedings; the pleading asks for a final order of eviction. The counterclaim then must be considered as one in summary proceedings and the Civil Court Judge so considered it.
If the clause is one of conditional limitation warranting a suit in summary proceedings, the petition by way of counterclaim is inadequate. It states no facts such as are necessaiv in a petition. It does not allege a landlord-tenant relationship (the special instances wherein such a relationship need not be alleged do not exist here [Real Property Actions and Proceedings Law, § 713]). It does not allege the terms of any lease under which the tenant was in possession, nor the period of the lease; it speaks only of “ an agreement to manage ”. Nor does it set forth facts justifying the landlords’ terminating the relationship of landlord and tenant, or the manner in which, or the date when the lease was terminated. It asks the court to confirm the termination. Allegations of facts such as those I mention are jurisdictional and their absence destroys the validity of the petition as a pleading.
Assume that the clause is one of conditional limitation, and that the petition was in fact adequate. The provisions in the lease which empower the landlords to terminate it must be strictly complied with. That was not done here. The clause empowered the landlords to terminate by ‘1 giving to the tenant five days’ notice in writing of the landlords’ intention so to do ”, and the lease was to 11 come to an end on the date fixed in such notice as if said date were the date originally fixed in this lease for the expiration thereof”. The notice, then, that the tenant was to receive had a twofold effect: the landlords choose to terminate and the lease terminates five days after notice. Of course, there is nothing to prevent the landlords from giving notice of a longer period. A 10-day notice was given.
But the letter of October 16 did not, once and for all, terminate the lease at the expiration of 10 days from the notice. The letter (written by the attorneys, a matter to which I shall refer below) referred to a number of alleged defaults: — nonpayment, failure to make repairs, to remove ‘1 violations ’ ’ ; and it called upon the tenant to cure the defaults in nonpayment and to start making the necessary repairs within 10 days. *802 “ Please be advised -that unless within ten '(10) days from -the date hereof payment is made of -all of the -items -which are dne and evidence-is received of your commencement of repairs and corrections of the -violations -filed against the said premises in the Department -of Buildings of -the City of New York, -the landlord shall consider the lease terminated -and the various and several tenants of the premises •shall be advised to pay rent and attorn to the landlords as of November 1, 1963 and an action will be instituted against you far -any and all damages sustained ’ This is -not the -same as -saying that the lease ends five [10] days from the date of notice. It keeps the matter in suspense; for it is not until -the end of the 10 days that the landlords will know -what the tenant will have done or what it intends to do. It may not have been necessary for the landlords to call the attention of the tenant to its defaults, but they did and they did not in so many words terminate the lease. Having given the tenant the opportunity to cure the defaults, they were obliged to wait out the period of time. It was not until the expiration of that period (the tenant ignored the letter) that the landlords could exercise their option. It was only then that the option clause came into operation; the landlords could then declare the lease at an end if they so wished. But they were required to give a five-day notice.
The second letter of October 28 did not give the tenant the five days ’ notice. It stated only that ‘ ‘ in accordance with the earlier letter the agreement of March 15, 1956 has been declared cancelled and terminated by reason of your breaches thereof.” No notice at all was given; the lease is at an end; when the ‘1 declaration of termination ’ ’ was made is not given. And if we incorporate “ 'November 1 ” of the first letter, the required five-day notice was not given; the period was shorter by one, and perhaps two, days. We may be dealing with a form of words. We may in one case or another be relying upon very refined distinctions, but as the lease can only be terminated by strict compliance with its language, it seems to me that the second letter was1 ineffectual to terminate. It attempted to “cancel and to terminate” then and there, hut this is what the landlords could not do.
I have referred to the fact that the two letters were written by the attorneys for the landlords. It is clear, certainly from decisions at nisi prius, that unless the lease provides otherwise a notice must be given by the landlords themselves; a notice given by an attorney will not do. Most of the cases qualify this absolute statement by adding a proviso that a letter from an attorney, if authenticated or if disclosing authority, will be *803 recognized. However that may be, a statement by the attorneys that they are attorneys for the landlords can hardly be sufficient. And the letter of October 16 indicates that the conclusions as to the amounts due, defaults and breaches, are conclusions reached by the attorneys as a result of information they had received and of their investigations. It was they who concluded that ‘ ‘ the landlords have the right to terminate the lease and to re-enter the premises and repossess the same ”, and it was they who stated that unless the defaults were cured within 10 days “the landlords shall consider the lease terminated”. And it was the attorneys who in the second letter declared the lease “cancelled and terminated”. The fact that the letters came from the attorneys is of significance here in view of the contents. The first letter was merely cautionaiy, and the landlords might or might not have acted after the 10-day period. It called for action thereafter on the part of the landlords which they might or might not take. In those circumstances, I think I should follow the practice of requiring a notice of this sort to come from the landlords themselves. The tenant cannot bo asked to determine for itself and at its peril the extent of the attorneys’ authority.
My conclusions are that the lease has not been terminated; that it is in full force and effect, and the decree to be entered will so declare. Beyond that I do not think I should go. The tenant asks me to enjoin the landlords permanently (there has been a temporary injunction) from attempting to collect rents, from attempting to interfere with their right to possession. That is unnecessary. Whatever rights the landlords may have for any breaches, past or continuing, they should be allowed to prosecute by way of summary proceedings, ejectment, or in any other form of action they may be advised to take. The remedy which the tenant seeks was adequately provided for by the temporary injunction. The landlords’ petition in summary proceedings must fail.
As to the landlords’ cause of action for damages, I am satisfied that there have been defaults by the tenant and that some compensation for damage is due. But the testimony is inadequate to enable me to come to a conclusion with respect to it. As to cost of repairs to the individual apartments, for example, the best that the landlords could offer was an assumed amount based upon inspection of only a relatively few apartments. But I do not think they should be prejudiced by having their claim for damages dismissed on the merits. I dismiss that cause of action without prejudice to the landlords’ bringing a new action or incorporating it in any other action that they *804 may faring. The lessee’s proceeding against the occupant of one of the apartments (one of the landlords) is dismissed. The proceeding was brought for nonpayment of rent, but as the tenant plainly owes the occupant and co-owner, the two landlords, an amount in excess of the small amount of overdue rent, that proceeding, too, is dismissed, without prejudice. Settle decree in accordance with this decision.