Shanley N. Egeth, J.
The respondent in this holdover proceeding has moved to dismiss the petition on the grounds that the proceeding is not maintainable in that its sublease has not been terminated. Respondent contends that petitioner’s purported termination was ineffective because a proper notice of termination was never served in conformity with the provisions of the sublease. Petitioner opposes the motion claiming that its letter of May 2, 1973 resulted in a termination of the leasehold as of July 31, 1973.
*1013 The single question presented on this motion is whether the sublease terminated by virtue of petitioner’s May 2, 1973 notice. The basic facts and the text of the controlling documents are not in dispute.
The respondent entered into a license agreement with the parent corporation of the sublessor, and simultaneously entered into the sublease for the premises which is the subject of this proceeding. Both documents in combination reflect the full agreement negotiated by the parties in licensing the respondent to operate a stage delicatessen at the subject premises.
The license agreement provides inter alia that (in addition to the rent directly payable under the term of the sublease) the respondent was required to pay a 6% royalty based upon sales; to supply the petitioner with a certified statement of net sales during each calendar month; to transmit a certified statement within 60 days after the end of each calendar year setting forth in detail gross sales, net sales, costs of goods and a balance sheet; and to maintain certain special records in its premises where they might be examined upon reasonable notice by the licensor. Article XX of said agreement further grants the licensor the right to terminate the agreement upon 30 days’ written notice upon the occurrence of a number of events, including, but not limited to: (b) a default in performance of any provision of the agreement if the licensee fails to take action to remedy the default within 30 days following receipt in writing of notice of such default; or.(e) in the event that the operator shall be adjudged to be in default in making any royalty payment.
Paragraph 7 of the sublease, executed simultaneously therewith, contains a recitation of the execution of the license agreement and incorporates the entire agreement into the sublease by reference; provides that in the event of conflict between the sublease and license agreement, the sublease shall prevail; and, expressly and automatically constitutes any default by the sublessee under the license agreement as an event of default under the terms of the sublease for the purpose of paragraph 10 thereof.
Paragraph 10 of the sublease defining “Event of Default” includes as such amongst the many enumerated therein: (a) failure to pay rent or any other money due within three days after due under the sublease; and (c) failure to perform any other terms or provisions of the sublease within five days after service of written notice of default, or any contrary time otherwise specifically set forth in the sublease. Among other *1014 remedies this section explicitly grants the sublessor the right to terminate the lease after an event of default on two days’ notice to the sublessee.
The parties hereto agree that the efficacy of petitioner’s letter of May 2, 1976 as a termination notice under the sublease is determinative of the issue of whether the sublease had been terminated prior to the commencement of this proceeding. It is conceded that no other notice was transmitted after said day.
This court concludes that the letter of May 2, 1973 was not sufficient to terminate the tenancy.
The parties agree that the sublease with the license agreement incorporated therein provided for a conditional limitation which would automatically terminate the lease upon the occurrence of such condition. (See 2 Rasch, New York Landlord and Tenant [2d ed.], § 747, pp. 194-195.) A conditional limitation has the dire effect of forfeiting all rights under the lease, which may not thereafter be revived even if the condition is subsequently cured. (First Nat. Stores v. Yellowstone Shopping Center, 21 N Y 2d 630.)
In analyzing these documents this court must read the entire document (including that which is incorporated therein by reference) and attempt to construe it in a manner which gives harmonious meaning to all parts thereof (Levine v. Bornstein, 4 N Y 2d 241; McDonnell v. McDonnell, 281 N. Y. 480; Bovin v. Galitzka, 250 N. Y. 228, 232); and construe it strictly against its draftsman (Fabulous Stationers v. Regency Joint Venture, 44 A D 2d 547; Rizzo v. Morrison Motors, 29 A D 2d 912).
Even more significantly, a court should seek to strictly construe the document against a draftsman to avoid the gross hardship of forfeiture of lease. (Jones v. Gianferante, 305 N. Y. 135, 138; Brause v. 2968 Third Ave., 41 Misc 2d 348, affd. 43 Misc 2d 691). Brause (41 Misc 2d 348, 353, supra) quotes from Lyon v. Hersey (103 N. Y. 264), as follows: “ In the construction of all contracts under which forfeitures are claimed, it is the duty of the court to interpret them strictly, in order to avoid such a result, for a forfeiture is not favored in law.” Additionally, for similar reasons, a notice of termination of a lease must be clear, unambiguous and unequivocal if it is to function as the catalyst which terminates a leasehold. (Spencer v. Faulkner, 65 Misc 2d 298; 28 Mott St. Co. v. Summit Import Corp., 64 Misc 2d 860; Granet Constr. Corp. v. Longo, 42 Misc 2d 798.)
*1015 Although most of the cases involving notice of termination relate to 30-day notices pursuant to section 232-a of the Real Property Law, the notice which was construed by the Supreme Court, New York County, in the Granet case (supra), sought termination of a lease in implementation of a conditional limitation. The notice in that case was almost identical in form to the one now before this court. In that case the court ruled that the notice contained therein was not a notice of termination, but one to cure the claimed breach, and that a subsequent notice of unequivocal termination would be required to end the lease. Before a lease is declared forfeited, the notice of termination must be carefully analyzed and strictly construed to assume full, clear and proper compliance with the right to terminate the tenancy.
Paragraph 10 of the sublease mandates two days’ written notice of termination in order to terminate the lease. Under this sublease, the transmittal of such a notice is the final act which creates the conditional limitation of this lease, rather than the default which gives rise to the right to transmit such notice. (Matter of Feist v. Long Is. Studios, 29 A D 2d 186; Matter of 19 South Main St. Corp. v. Phalanx Motors, 36 Misc 2d 114; 2 Rasch, New York Landlord and Tenant [2d ed.], § 751, pp. 201-203.) Such a notice must clearly by its terms provide for the automatic termination of the leasehold and convey this knowledge to the other party. A notice to cure a default which enables the party transmitting such notice to unilaterally thereafter determine whether to deem the default remedied or substantially remedied and to seek payment of rent, or, alternatively, to refuse rent and claim default and termination, cannot be deemed a valid, clear, unambiguous, unequivocal notice of termination or limitation. Such a notice provides the tenant with no clear course of action. It puts him in a position where even if he makes an effort to cure the alleged default, the landlord may, nevertheless, attempt to retain the benefit of that labor while simultaneously claiming termination of the lease by asserting that the notice to cure was a notice to terminate or that the default was insufficiently remedied.
The respondent is entitled to a clear, unambiguous two-day notice of termination after the expiration of the specified time to cure a relevant default. The May 2 letter referring to various provisions of the licensing agreement and the sublease, and specifically requesting compliance within 30 days, states that the “ sublease will then terminate in accordance with paragraph 7 and 10 of the sublease. ’ ’ Paragraph 10 requires a subsequent *1016 two-day notice of termination. The May 2, 1973 letter is not such a letter. It is deemed to be a notice to cure, which may create the right to transmit a two-day notice of termination in the event of noncompliance. Like the letter in Granet (42 Misc 2d 798, supra), it did not clearly convey to the recipient that the lease would terminate without further notice. This is particularly true in the light of the different text of1 two prior notices of termination transmitted to respondent in 1970.
Accordingly, the May 2,1978 letter being insufficient to terminate the sublease, the sublease remains in existence and a holdover proceeding is not maintainable. The petition in the holdover proceeding is therefore dismissed.