OPINION OF THE COURT
David B. Saxe, J.
The unique issue that I must resolve in this commercial nonjury holdover proceeding is: May a document conveying a property interest that is called a sublease by the parties to it, but is under accepted principles of real property law, an assignment (because the transferor had not reserved any part of the transferred term to itself) be modified by a later agreement between the named parties to it, which creates a new expiration date, prior to the end of the previously transferred term, thereby attempting to create a reversionary interest?
The importance of the legal effect of this subsequent modification agreement (hereinafter the Agreement) is highlighted by another clause in the agreement that states in part that a default by the tenant debtor under the terms of a separate security agreement is a conditional limitation of the “sublease”, causing an immediate and final termination of the tenant’s estate.
The pertinent facts briefly stated are as follows: On March 22, 1977, Murray Hill Mews Associates as landlord and Murray Hill Mello Corp. (the petitioner here) as lessee entered into a store lease, the term to run from March 15, *684 1977 to March 14,1992. On February 1,1979, a “sublease” agreement was executed by the petitioner and respondent, the term beginning February 1, 1979 and ending March 14, 1992. The overlord consented to the “sublease”. The respondent tenant Bonne Bouchee Restaurant, Inc., rented the premises located at 566 Third Avenue, New York, New York, for use as an “omelet and crepe restaurant”. The purported sublease extended to the last day of the over-lease. On November 14, 1979, the respondent entered into a security agreement with “Shirlee Vittorio and Rochelle Rothfleisch”, as secured parties. The. security agreement was executed to collateralize the respondent’s indebtedness of $49,000, a substantial part of which was evidenced by a series of negotiable notes signed by the respondent. On the same day, November 14, 1979, the petitioner and respondent entered into a modification agreement. Principally, the modification agreement sought to accomplish two things: First, the date of expiration of the “sublease” was changed to February 28, 1992, instead of the original termination date, March 14, 1992, which coincided with the end of the overlease. Second, a default in the security agreement, which might be occasioned by an uncured default in the payment of any note, would be deemed a conditional limitation of the lease, thereby causing the lease term to expire immediately.
A default occurred in the payment of a certain note under the security agreement. A notice of default was mailed to the respondent by the attorneys for the secured party, not the petitioner. The default was not cured in time. The present summary proceeding for eviction was then commenced by the petitioner.
Under the foregoing circumstances, may this proceeding be maintained? I hold that it cannot.
It is law in New York that where a lessee of real property transfers his entire interest in the premises to a third party who enters into possession, retaining no reversionary interest in the property transferred, such transfer constitutes an assignment of the lease and the assignee becomes directly liable to the original landlord. (New Amsterdam Cas. Co. v National Union Fire Ins. Co. of Pittsburgh, 266 NY 254; Stewart v Long Is. R. R. Co., 102 NY 601; Spencer *685 Operating Corp. v Spencer Hotel Corp., 17 Misc 2d 887 [App Term, 1st Dept].) By virtue of an assignment, the transferor has divested itself of the privity of estate it had with its landlord. (Anjo Rest. Corp. v Sunrise Hotel Corp., 98 Misc 2d 597.) Privity of estate thereafter exists between the overlord and the assignee (Stewart v Long Is. R.R. Co., supra; 78th St. & Broadway Co. v Purssell Mfg. Co., 92 Misc 2d 178 [App Term, 1st Dept], affd 173 App Div 887), and the assignor has no interest in the property but maintains a contractual privity with the overlord. (Anjo Rest. Corp. v Sunrise Hotel Corp., supra, p 598.) An assignment differs from a sublease in that the transferor in the latter reserves to itself a reversionary interest in the leasehold estate. (Howard Stores Corp. v Robison Rayon Co., 64 Misc 2d 913, affd 36 AD2d 911.)
The “sublease” agreement reserved no interest in the transferred term to Murray Hill Mello Corp., the petitioner. Although the overlease grants a right of re-entry and although provisions of the overlease are deemed part of the “sublease”, it is the law in New York that “[t]he possible right of re-entry for breach of any condition was not the retention of such a reversionary interest as is intended when distinctions are drawn between assignments and subleases.” (See Friedman, Leases, § 7.4, citing Gillette Bros, v Aristocrat Rest., 239 NY 87, 90.) The legal effect of the “sublease” was to create an assignment of the overlease of March 22, 1977. Therefore, the subsequent modification agreement that sought to establish an earlier termination date for the sublease was a nullity because the petitioner had no interest in the demised premises when the modification agreement was executed. There was nothing to modify. The remainder of its lease term had been legally assigned (see Stewart v Long Is. R.R. Co., supra).
To be sure, the rule of law applicable to a determination of whether a real property transfer is an assignment or a sublease (based on whether the primary lessee has transferred his whole estate or has retained a fragment of his estate) has received criticism. (See Stewart v Long Is. R.R. Co., supra, p 617 [Finch, J., dissenting opn].) The dissenting argument advanced against the application of the traditional rule of law is essentially twofold: that it is
*686 unduly mechanical and fails to take into account the intentions of the parties, and secondly that although the rule in its origin under English feudal law had a substantial basis in reason, under present day law, it serves no function. (Cf. Peake, Warranty of Habitability — Law Undergoing Major Changes, NYLJ, April 15,1982, p 1, col 2.) At common law, the undertenant owed the overlord a service of fealty. If the undertenant could part with his entire estate to a transferee, the service of fealty was gone and so the new tenant was deemed to hold under the paramount lease, as an assignee and bound by his original tenant’s covenant to render service (Stewart v Long Is. R.R. Co., supra, p 617). The necessity of enforcing an overlord’s right to service of fealty is clearly of no moment, but nevertheless the rules relating to the difference between an assignment of a lease and a subletting remain.
The importance of promoting uniformity and certainty in rules of property has been judicially recognized (Heyert v Orange & Rockland Utilities, 17 NY2d 352; Rock Spring Distilling Co. v Gaines & Co., 246 US 312, 320.) In fact, the Court of Appeals has said: “This court has often emphasized the importance of enforcing law as it finds it in decisions (Sternleib v. Normandie Nat. Securities Corp., 263 N. Y. 245) holding that ‘established precedents are not lightly to be set aside even thoúgh they seem archaic’; the remedy being ordinarily with the Legislature (Schindler v. Royal Ins. Co., 258 N. Y. 310, 314).” (Heyert v Orange & Rockland Utilities, supra, p 360.) So, when rules involving rights in real property are concerned, the doctrine of stare decisis is more strictly followed. (17 NY2d 352, 362.) This is especially so where the effect of holding otherwise, might be to favor the enforcement of a conditional limitation which would have the dire effect of causing a forfeiture under a lease (First Nat. Stores v Yellowstone Shopping Center, 21 NY2d 630; see Kirschenbaum v M.T.S. Franchise Corp., 77 Misc 2d 1012).
Even cases (e.g., Spencer Operating Corp. v Spencer Hotel Corp., supra) that have seemed to support the view that the intention of the parties, rather than the length of the reversionary term, should prevail in issues of contraction, will allow the intention of the parties to prevail as a *687 guideline only if it is “consonant with established legal principles.” (Spencer Operating Corp. v Spencer Hotel Corp., supra, p 887.)
That being said, the “sublease” in issue is legally an assignment which ended the petitioner assignor’s privity of estate with his landlord, under the overlease. The modification agreement was therefore made with one who had no estate in the premises and was void. Since there was no reassignment back to the petitioner and a reconveyance to the respondent by a “true” sublease, the assignment remained in effect and the modification agreement changed nothing at all.
Had I found the modification agreement to be effective, I still would have held that this action may not be maintained because the petitioner’s notice of default was ineffective. Pursuant to the modification agreement, a five-day written notice to cure a default in the security agreement must be given to the tenant before a termination of the lease may be effected. The termination of the lease under the provision is stated to be at the landlord’s option. The notice to cure the default however was sent by the attorneys for the secured party, Beal, Kagan & Lentz, P. C., not by the landlord, the petitioner here. Was termination sought at the landlord’s option as required by the modification agreement? I hold that it was not. In giving notice of termination under a termination option in a lease, there must be strict observance with the provisions of the lease. (Rasch, New York Landlord and Tenant [2d ed], § 766; see, also, Dubois & Son v Goldsmith Bros., 273 App Div 306.) The notice of default in this case was transmitted to the respondent by the attorneys for the secured party not the petitioner landlord. That constituted an insufficient and therefore invalid notice of default (see 185 East 85th St. Co. v Gravanis, NYLJ, Jan. 21,1981, p 6, col 2 [App Term, 1st Dépt]).
Since I have held that the original sublease was in reality an assignment, the relationship of the petitioner and the respondent is that of assignor and assignee, not that of landlord and tenant. But, an assignor of a lease cannot maintain a summary proceeding for eviction *688 against its assignee. (Lo Russo v Great 110, Inc., 59 Misc 2d 40; RPAPL 721.)
The petition is therefore dismissed.