BASIL L. TEHAN et al., Respondents, v THOS. C. PETERS PRINT-
ING CO., INC., Appellant.

Fourth Department, November 16, 1979

## APPEARANCES OF COUNSEL

*Julian & Pertz (Richard Pertz* of counsel), for appellant.

*Lawrence P. George (Earle C. Bastow* of counsel), for respondents.

## OPINION OF THE COURT

CARDAMONE, J. P.

 Respondents, the new owners of a commercial building, served a notice of termination of a written lease on appellant, a tenant, when the rent which, under the lease, was to be paid on the first day of the month was not received on that date. Throughout the tenancy with the previous owner, appellant had been in the habit of paying the rent after the first of the month. Are the new owners, concededly without actual knowledge of the waiver of strict compliance with this term of the lease by their predecessor, charged with constructive knowledge of it? We think not.

The facts are essentially undisputed and may be briefly stated. On March 1, 1973 appellant, Thomas C. Peters Printing Co., Inc. (Peters), entered into a lease agreement with H. J. Brandeles Corporation whereby appellant, as tenant, was let certain premises located at 637 Eagle Street, Utica, New York, for a period of four years. On December 3, 1976 appellant exercised its option to renew the lease for a second four-year term to expire February 28, 1981. The lease agreement pro-

vided in pertinent part that rent be paid in equal monthly payments, in advance, on the first day of each month. Through the years appellant had been in the habit of paying the rent late. During the year 1978 no rent was paid on the date it became due. Payments were made anywhere from 25 to 40 days late. The landlord, Brandeles, made no objection to the late payments and accepted appellant's checks when received.

On December 5, 1978 respondents, brothers Basil L., Richard J., Robert J., Frederick J. and Steven A. Tehan (Tehan), purchased the premises from Brandeles. Respondent Richard J. Tehan visited appellant at its office on December 15, 1978 and informed appellant of the purchase from Brandeles and offered to purchase the remaining term of appellant's lease. The offer was refused. Respondents then formally advised appellant of the change of ownership in a letter dated December 19, 1978. After advising Peters of the Tehans' purchase of the building which the Peters Company occupied, the letter continued by stating: "[t]herefore, I am writing this letter to let you know that beginning January 1979, the monthly rental which is due on the 1st of each month should now be paid to the undersigned at the above address, instead of H. J. Brandeles Corporation". The first rent payment to have been made by appellant to respondents was due January 2, 1979, the first business day of January. Consistent with his prior course of performance appellant did not pay the rent on that day. Respondents treated this as a default under the lease agreement and pursuant to its provisions elected to terminate appellant's lease. On January 3, 1979 respondents served on appellant a notice of termination, termination being effective as of January 8, 1979.

Immediately after it received the notice of termination appellant tendered a check for the full amount of the rent due. Respondents refused it. Several days later respondents commenced summary proceedings to evict appellant under subdivision 1 of section 711 of the Real Property Actions and Proceedings Law.

At the hearing held in the City Court of Utica on January 22, 1979 appellant testified that Brandeles was in the habit of accepting tardy rent checks; that he conversed with respondent Richard J. Tehan on January 2, 1979, but no mention of a demand for the rent was made at that time. However, appellant did state that at no time did he inform respondents

that he was in the habit of paying the rent late. Respondent Richard J. Tehan testified that respondents never inquired of appellant when he made rent payments; that respondents never inquired of their predecessor, Brandeles, what the rent paying habits of the appellant were and that respondents were not aware of Peters' practice of late payment. City Court awarded possession of the premises to respondents by a judgment entered March 12, 1979. On appeal to Oneida County Court the judgment was affirmed on June 7, 1979. This appeal from the order affirming the City Court judgment followed.

As a primary matter respondents contend that the issue is moot since appellant concedes that it has relocated its business. However, that does not moot the issue. Appellant's lease did not expire until 1981 and while a reversal by this court will not automatically reinstate the lease, appellant would have the option to do so (Wolf-Kahn Realty Corp. v Sussman, 240 App Div 422). Further, appellant seeks to avoid any collateral estoppel effect in a possible action for damages. This controversy is, therefore, viable and not moot.

The question presented by appellant is a narrow one, i.e., are respondents, the new owners, charged with constructive knowledge of and, therefore, bound by, their predecessor's waiver of strict compliance with the lease terms providing for rent payments on the first of the month. This is an issue not previously determined in New York. It is clearly the law of this State that a successor-in-interest to real property takes the premises subject to the conditions as to the tenancy, including any waiver of rights, that his predecessor in title has established if the successor-in-interest has notice of the existence of the leasehold and of the waiver (Bank of New York v Hirschfield, 37 NY2d 501; Radcliffe Assoc. v Greenstein, 274 App Div 277; 33 NY Jur, Landlord and Tenant, § 74, p 376). The key to the liability of the successor-in-interest is notice of the relevant lease provision or waiver thereof. Notice may be actual or constructive (Bank of New York v Hirschfield, supra). Possession of premises is constructive notice to a purchaser of the rights of the possessor (Phelan v Brady, 119 NY 587). The precise issue raised by appellant is whether possession is also constructive notice of all conditions and waivers of the lease agreement which reasonable inquiry by the purchaser would reveal. The trial court determined there was no duty of inquiry on the part of the purchaser as successor-in-interest, except as to those conditions the exis-

tence of which might reasonably be indicated by an inspection of the premises. We agree.

Appellant argues that the general rule in regard to the obligations of a grantee is broad enough to support its position that a duty of inquiry exists. Support is found for this argument in *Phelan v Brady (supra,* pp 591-592) where the Court of Appeals held: "[a]ctual possession of real estate is sufficient notice to a person proposing to take a mortgage on the property, and to all the world of the existence of any right which the person in possession is able to establish". The rule that emerged is that mere possession is constructive notice of any and all rights the possessor can establish. It has been recited in numerous cases and treatises as a general rule, not restricted simply to issues of record notice (see *Adelson v Sacred Assoc. Realty Corp.,* 192 App Div 601; *Adams-Flanigan Co. v Kling,* 198 App Div 717; *American Exch. Nat. Bank v Smith,* 61 Misc 49; 3 Warren's Weed, New York Real Property, Leases and Lettings, § 7.05; Rasch, NY Landlord and Tenant, § 10.98; 33 NY Jur, Landlord and Tenant, § 74). In its application the rule has been broadly stated where the issue before the court was of the continued viability of the waiver of a lease provision *(Adams-Flanigan Co. v Kling, supra; Radcliffe Assoc. v Greenstein, supra; Vendramis v Frankfurt,* 86 NYS2d 715; *215 West 34th St. v Feldman,* 105 NYS2d 209; *Irbar Realty Corp. v Vallins,* 64 NYS2d 843; *Natanson v Gavaert Co. of Amer.,* 96 NYS2d 774). Appellant contends, therefore, that a purchaser (here respondents) takes no greater rights than his vendor, including the seller's right to enforce lease provisions; and that it is inequitable to permit a purchaser to terminate a tenant's interest when his vendor, the original contracting party, could not have done so. While this argument is not without merit, we are persuaded that there are sound policy reasons for allowing this successor-in-interest to terminate the tenant's lease even though their predecessor could not.

■ ■ We observe initially that the general rule is stated more broadly than the facts of the cases cited warrant. In each of those cases cited immediately above there was an added element of actual notice to the purchaser of the waiver or constructive notice through the fact that the deviation from the lease provision in issue was readily apparent upon an inspection of the premises. Constructive notice only arises when a purchaser has knowledge of facts which would lead a

reasonably prudent person to make inquiry *(Royce v Rymkevitch,* 29 AD2d 1029; *Bierzynski v New York Cent. R. R. Co.,* 31 AD2d 294). It is readily apparent that possession by a tenant is constructive notice of the terms of the lease agreement and the actual uses to which the property has been put. However, the duty to pay rent is a primary obligation of a tenant and it is not apparent from the mere existence of a leasehold interest that an agreement for the timely payment of rent has been waived. Indeed, such a waiver is in direct conflict with the terms of the lease. Where the lease itself provides when the rent is payable and no contrary practice is indicated, a purchaser without actual notice should be able to rely upon the lease without further inquiry. The concept of waiver is linked to notice. There can be no waiver of a contractual right without notice; and, without some form of notice there is no duty to inquire whether a waiver exists. It is of paramount importance that the public policy of unencumbered alienability of title remains certain. To further this policy the curtailment of a purchaser's (here, Tehan) rights must be limited to those conditions of the lease of which it has notice. Waiver of a purchaser's rights based upon that constructive notice which arises from possession must be limited to those deviations from the terms of a lease revealed by an inspection of the premises. To intervene in the circumstances here would undermine the stability and certainty of a commercial real estate transaction for the unacceptable reason of judicial sympathy *(Graf v Hope Bldg. Corp.,* 254 NY 1, 4).

■ Appellant's final argument is that even assuming a default we should reverse because the law abhors a forfeiture of a leasehold (see *J.N.A. Realty Corp. v Cross Bay Chelsea,* 42 NY2d 392), particularly for nonpayment of rent *(57 E. 54 Realty Corp. v Gay Nineties Realty Corp.,* 71 Misc 2d 353). As the Court of Appeals recently observed, in a somewhat similar context, it may be exploitive or even perhaps unconscionable for a landlord to refuse to accept an effort to cure a late rent payment and instead seek to enforce a lease acceleration clause. Nonetheless, the court went on to hold that this was a routine commercial lease and absent some element of fraud, exploitive overreaching or unconscionable conduct on the part of the landlord, equitable intervention was not justified *(Fifty States Mgt. Corp. v Pioneer Auto Parks,* 46 NY2d 573, 578-579).

We believe that holding apt. Here the lease was not uncon-

scionable and the parties were not of unequal bargaining power. Further, appellant was on notice that the respondents wanted to strictly enforce the terms of the lease regarding prompt payment on the first. Absent evidence of fraud, exploitive overreaching or unconscionable conduct we can see no reason to interfere with the contractual rights and obligations of the parties (see *First Nat. Stores v Yellowstone Shopping Center,* 21 NY2d 630, 638).

Accordingly, the order should be affirmed.

SCHNEPP, DOERR, WITMER and MOULE, JJ., concur.

Order unanimously affirmed, with costs.