OPINION OF THE COURT
Per Curiam.
Final judgment entered December 29,1983 reversed, with $10 costs, tenant’s motion for summary judgment denied, petitioner’s cross motion for summary judgment granted, and final judgment of possession directed in favor of petitioner.
Tenant is the assignee of a proprietary lease for an art gallery at 96 Grand Street, Manhattan. The lease provided at paragraph 29: “If upon, or at any time after the happening of any of the events mentioned in subdivisions (a) to (i) * * * the Lessor shall give to the Lessee a notice stating that the term hereof will expire on a date at least five days thereafter, the term of this lease shall expire on the date so fixed in such notice as fully and completely as if it were the date herein definitely fixed for the expiration of the term, and all right, title and interest of the Lessee hereunder shall thereupon wholly cease and expire, and the Lessee shall thereupon quit and surrender the floor to the Lessor, it being the intention of the parties hereto to create hereby a conditional limitation” (emphasis added). One of the events enumerated as the subject of a conditional limitation was a default by the tenant in the payment of rent which was not cured within 10 days after written notice from the landlord (subd [d]).
Previous holdover proceedings brought against the present tenant predicated upon nonpayment of rent were settled by stipulation, the last settlement occurring in February 1983. That stipulation amended the proprietary lease to provide that any and all moneys payable under the lease due on the first day of each month were deemed payable no later than the fifth day (par [1] [a]). Paragraph (1) (b) further provided: “If tenant defaults in sub-paragraph [a] or on any other term or condition of the lease requiring the payment of rent, additional rent, maintenance or other charges then the lease shall terminate on its own terms five (5) days after a notice of termination has been served to tenant and only after said default has remained uncured for ten (10) days after the service upon tenant of a notice specifying the default.” A notice to cure was served on July 7, 1983, alleging a default in the payment of rent and *963 additional security in the total sum of $1,600. The default was not cured, the tenancy was terminated effective August 24,1983 pursuant to a notice of termination, and holdover proceedings were commenced September 7, 1983. Upon respective motions for summary judgment, a strictly legal question was presented to the Civil Court — to wit, whether a default in payment of rent can be treated as a conditional limitation so as to permit recovery of commercial premises in a holdover proceeding. The court concluded, inter alla, that the creation of a conditional limitation based on a rent default is unenforceable as violative of public policy because it vitiates the statutory right to cure defaults in nonpayment expressed in RPAPL 751 (1). Accordingly, the petition was dismissed without prejudice to the maintenance of nonpayment proceedings.
We reverse. Where a lease between commercial parties contains a conditional limitation for nonpayment of rent, it shall be enforced in the absence of a showing of fraud, exploitive overreaching or other unconscionable conduct on the part of the landlord (Matter of Birnbaum v Yankee Whaler, 75 AD2d 708, affd, 51 NY2d 935). In the commercial arena, “A covenant to pay rent at a specified time * * * is an essential part of the bargain as it represents the consideration to be received for permitting the tenant to remain in possession of the property of the landlord” (Fifty States Mgt. Corp. v Pioneer Auto Parks, 46 NY2d 573, 578). The original parties to the proprietary lease expressly agreed to a conditional limitation in the event of a default in rent, and must have anticipated the effect of such a clause in a nonpayment situation. Furthermore, the limitation was reaffirmed by this tenant in the stipulation settling a prior proceeding which had also been brought because of tenant’s failure to timely pay rent. It is therefore clear that the limitation was the result of negotiations between parties at arm’s length, and public policy will not be offended by enforcing the agreement the parties made (see, Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211).
The fact that landlord could, at its option, have brought a nonpayment proceeding (RPAPL 711 [2]), in which event the tenant would have had the right to deposit the amount of the final judgment into court prior to the issuance of a warrant (RPAPL 751 [1]), did not preclude the landlord from terminating the lease in accordance with its terms and maintaining a holdover proceeding pursuant to RPAPL 711 (1). Nor was the tenant wholly without a remedy in the circumstances. He could have followed the routine practice of obtaining a stay in Supreme Court to toll the running of the cure period and the expiration of *964 the lease, so that the tenancy would remain intact until the merits of the dispute were litigated (see, e.g., Runes v Douglas Elliman-Gibbons & Ives, 83 AD2d 805 [1st Dept]). This remains the standard procedure in commercial disputes, and injunctive relief is as readily available where the subject of the conditional limitation is nonpayment of rent as where any other substantial breach is alleged. Tenant did not follow that course here, but elected to defend the summary proceeding on the merits in Civil Court. Since we conclude that the termination clause in the lease, as modified by the stipulation, is enforceable, and since we perceive no factual issue in the papers as to tenant’s default (payment is not alleged, nor is any other defense which might excuse nonpayment), we are required to grant landlord a possessory judgment. In this context, the rule enunciated in First Natl. Stores v Yellowstone Shopping Center (21 NY2d 630, 637) still prevails, and we may not revive the terminated lease or grant equitable relief to the tenant “if there is no acceptable basis for doing so”. Nor may we afford the tenant an additional period within which to cure. The statute which provides for a stay of the warrant and which grants a losing tenant a 10-day period within which to cure the default applies only to holdover tenants in residential dwellings (RPAPL 753 [4]).
Hughes, J. P., Riccobono and Parness, JJ., concur.