■ TIMES SQUARE STORES CORPORATION, Respondent, v BERNICE REALTY COMPANY, Appellant. — In an action for a judgment declaring the rights and legal obligations of the parties pursuant to a lease agreement entered into between plaintiff and defendant's assignor in 1968, defendant appeals (1) from an order of the Supreme Court, Kings County (Rader, J.), dated April 18, 1983, which, *inter alia,* granted plaintiff's motion for a preliminary injunction enjoining defendant from taking any action to declare plaintiff in breach of its lease with respect to the alleged violations thereof and directing the parties to proceed expeditiously with respect to plaintiff's application to amend the certificate of occupancy for the building on the premises, and (2) from so much of an order of the same court, dated June 15, 1983, as granted plaintiff's motion to compel it to execute an application to amend the certificate of occupancy theretofore filed by plaintiff with the New York City Department of Buildings and denied defendant's cross motion to vacate, in whole or in part, the preliminary injunction granted by the prior decision and order.

Orders modified by deleting the provisions thereof which directed defendant to act affirmatively regarding plaintiff's application to amend the certificate of occupancy and substituting therefor provisions denying plaintiff's motions insofar as they sought such relief, and order dated April 18, 1983 further modified by adding thereto a provision requiring that plaintiff file in the office of the clerk of the Supreme Court, Kings County, an undertaking pursuant to CPLR 6312 (subd [b]) and serve a copy of the same upon the defendant. As so modified, order dated April 18, 1983 affirmed, and order dated June 15, 1983 affirmed, insofar as appealed from, with one bill of costs to defendant, and matter remitted to the Supreme Court, Kings County, for the purpose of conducting a hearing to fix the amount of the undertaking and the date on or before which said undertaking is to be served and filed, unless the parties stipulate to an appropriate amount on said date, and for resolution at trial of all factual issues raised by plaintiff's application for mandatory injunctive relief.

The facts are essentially undisputed. Plaintiff (hereinafter TSS) has been the sole tenant of the subject premises pursuant to a lease dated September 30, 1968 with Rentar Development Corporation. Rentar assigned its interest as landlord to defendant on or about April 23, 1979. Section 4.01 of the lease delineates the purposes for which the premises may be utilized. That section provides in full:

"4.01. Tenant shall use and occupy the demised premises for the following purposes and *none other:*

"Warehouse and distribution center for Tenant's retail, wholesale and import operations; printing, sign making and service and repair departments; manufacturing, processing and assembling operations; general and administrative offices.

"Tenant may in conjunction with the foregoing engage in all activities permitted by law for such business. Tenant, however, shall do no act that contravenes the certificate of occupancy" (emphasis added).

The certificate of occupancy limits occupancy to specified levels which TSS has admittedly exceeded.

By letter dated December 14, 1982, defendant notified TSS that it was occupying the premises in violation of the certificate of occupancy issued with respect thereto and that unless such breach was cured the failure to cure would be deemed a default resulting in termination of the leasehold. Justification for this action was found in paragraph 18.01 of the lease which provides, in pertinent part:

"18.01. Each of the following shall be deemed a default by Tenant and a breach of this lease, namely * * *

"(b) A failure on the part of Tenant to observe or perform any of the other terms, covenants or conditions of this lease on the part of Tenant to be observed and performed, which failure persists after the expiration of thirty (30) days from the date Landlord gives notice to Tenant calling attention to the existence of such failure; provided, however, that if the matter which is the subject of the notice is of such a nature that it cannot reasonably be corrected within thirty (30) days, then no default shall be deemed to have occurred if Tenant, promptly upon the receipt of the notice, commences the curing of the default and diligently prosecutes the same to completion; but if Tenant does not adhere to such prompt and diligent prosecution the grace period shall be deemed to expire as of the end of said thirty-day period and Landlord may proceed accordingly notwithstanding the intervening payment of rent by Tenant".

By letter dated January 21, 1983, TSS advised defendant that it had undertaken to cure its alleged breach. TSS's efforts consisted of filing an application with the New York City Department of Buildings to "correct" the existing certificate of occupancy in such manner that it would be in compliance therewith. Defendant rejected these efforts and apprised TSS of its intention to serve it with a lease termination notice on January 27, 1983. Defendant moreover informed counsel for TSS that "in flagrant violation of the Use Clause [of the lease] and in egregious violation of the Certificate of Occupancy your client has created an occupancy which is dangerous and detrimental to human life, which constitutes unlawful occupancy, and which constitutes an unsafe building condition by permitting an occupancy which is approximately twice the occupancy permitted by the Certificate of Occupancy". Defendant unequivocally refused to execute plaintiff's application to amend the certificate of occupancy, called an "Altered Building Application", on the ground that the only way for TSS to have cured its default was "to have reduced its occupancy to the number of persons and vehicles permitted by the existing, wholly correct Certificate of Occupancy".

Upon TSS's application, Special Term, by the order appealed from dated April 18, 1983 (Rader, J.), enjoined defendant from taking any action to declare TSS in breach of its lease, tolled the running of the period within which to cure TSS's violations and directed the parties to proceed expeditiously with the processing of the application to amend the certificate of occupancy.

The Department of Buildings thereafter issued notices of violation with respect to the subject premises. The first violation noted was "changing occupancy of [the] premises without obtaining [a] new certificate of occupancy". TSS thereupon moved to compel defendant to comply with the prior court order by executing its proposed "Altered Building Application".

The motion of TSS was granted by the order appealed from dated June 15, 1983 (Rader, J.), and that portion of defendant's cross motion which sought a vacatur of the court's prior order was denied. All proceedings to enforce the orders appealed from have been stayed pending determination of the appeals.

To avoid the injustice of subjecting a tenant in TSS's position to summary eviction proceedings during the pendency of its declaratory judgment action without any further opportunity to cure its breach, courts have devised "the *Yellowstone* injunction, i.e., a preliminary injunction by a tenant prior to the expiration of the cure period, which stays the running of that period, and allows the lease to remain in effect until the underlying dispute has been resolved" (*Brodsky v 163-35 Ninth Ave. Corp.*, 103 AD2d 105, 106; *First Nat. Stores v Yellowstone Shopping Center*, 21 NY2d 630). As a matter of policy, courts have routinely granted *Yellowstone* injunctions in order to avoid forfeitures of tenants' interests and, in doing so, have accepted far less than the normal prerequisites for preliminary injunctive relief (see *Post v 120 East End Ave. Corp.*, 62 NY2d 19, 25; *Brodsky v 163-35 Ninth Ave. Corp., supra; Ameurasia Int. Corp. v Finch Realty Co.*, 90 AD2d 760; *Podolsky v Hoffman*, 82 AD2d 763). "The threat of termination of lease and forfeiture, standing alone, has been sufficient to permit maintenance of the *status quo* by injunction" (*Post v 120 East End Ave. Corp., supra*, p 26). Inasmuch as tenants have a substantial property interest in their leaseholds, the right to cure violations must be preserved in order to ensure that if they prevail on the merits, their success will not be nullified by virtue of the lease having been terminated (*Podolsky v Hoffman, supra*).

The instant case is clearly not a situation where there is no basis in either a provision of the lease or the actions of the parties upon which to grant a right to cure the tenant's violation. Absent such a provision in the lease, the equitable relief of tolling the period within which to cure a default cannot be invoked (see *Wuertz v Cowne*, 65 AD2d 528; *Boyarsky v Froccaro*, 125 Misc 2d 352). Nor is this a situation where a *Yellowstone* injunction is unavailable because the default is such that it cannot be cured (cf. *Childress v Lipkis*, 72 AD2d 724, app dsmd 48 NY2d 975). Indeed, the Department of Buildings, in its

notices of violation, suggested two possible courses of ameliorative action, i.e., either obtain a new certificate of occupancy or restore occupancy to its legal use forthwith.

It further bears noting that TSS, as a commercial tenant, does not enjoy the protection of RPAPL 753 (subd 4). Consequently, it cannot be argued that TSS's interests will be sufficiently protected should its applications for a *Yellowstone* preliminary injunction be denied (cf. *Brodsky v 163-35 Ninth Ave. Corp., supra; Gilmore v 163-35 Ninth Ave. Corp.,* 104 AD2d 356; *Kosack v 163-35 Ninth Ave. Corp.,* 104 AD2d 360).

While we conclude that both the granting of TSS's application for a preliminary injunction and the denial of defendant's cross motion for its vacatur were proper, it was patently improper for Special Term to have failed to provide for a suitable undertaking (CPLR 6312, subd [b]; *Kurland Cadillac-Oldsmobile v Cable,* 83 AD2d 902, 903). Accordingly, the order dated April 18, 1983 has been modified by remitting the matter to Special Term with a provision that TSS shall give an undertaking, as provided in CPLR 6312 (subd [b]), in an amount to be fixed by Special Term after a hearing held for such purpose unless the parties stipulate to an amount (*City Store Gates Mfg. Corp. v United Steel Prods.,* 79 AD2d 671, 672; *Blumberg v Thomaston-Spruce Corp.,* 46 AD2d 671).

As respects Special Term's award of mandatory injunctive relief, we are of the view that such measure was unwarranted, inasmuch as a question of fact exists as to the propriety of curing the violations in the manner proposed by plaintiff.

The basis of the claim of TSS that it is entitled, during the lease term, to make further alterations to meet its changing needs is section 8.01 of article 8 of the lease, which reads as follows:

"8.01. Tenant may from time to time during the term make such changes, alterations, additions, substitutions or improvements (herein collectively called 'Tenant Alterations') in and to the demised premises as Tenant may reasonably consider necessary and desirable to adapt or equip the premises for Tenant's use and occupancy * * *

"Prior to making any Tenant Alterations that will cost or affect the 'Urban Renewal Plan' to which the premises are subject, in excess of $25,000 or involve structural work or changes, Tenant shall deliver plans and specifications therefor to Landlord and obtain Landlord's written approval thereof, which approval Landlord agrees shall not be unreasonably withheld or delayed. If Landlord shall not have signified its disapproval of such plans and specifications within fifteen (15) days

after delivery thereof to Landlord, such plans and specifications shall be deemed to have been approved by Landlord. Tenant shall have the right to change and amend said plans and specifications so approved by Landlord and without Landlord's consent, provided the change or amendment made shall not substantially affect the character and value of the work so to be done".

Defendant, on the other hand, cites a memorandum of the Department of Buildings, dated May 8, 1984, to the effect that applications with respect to certificates of occupancy may not be made by a lessee in the capacity of a lessee. Accordingly, there was no authority for Special Term to compel defendant to cooperate in the processing of TSS's application.

It is precisely the matter of the propriety of TSS's method of curing its violations which demands resolution. Among the questions to be considered at trial is the scope and extent of article 8 of the lease. However, by ordering the parties to proceed expeditiously and to cooperate in the processing of TSS's application, the court effectively rendered the declaratory judgment action moot inasmuch as TSS has already been awarded the ultimate relief it seeks. To grant a party to an action its ultimate relief sought, *pendente lite,* is a practice which is generally eschewed (see *Morgan v New York Racing Assn.,* 72 AD2d 740, 741).

The granting of a mandatory injunction compelling a party to affirmatively act has been labeled by this court as an "extraordinary" and "drastic" remedy (*Medvin v Grauer,* 46 AD2d 912). With respect to the granting of a preliminary injunction *pendente lite,* it has been held that "[s]uch extraordinary action is justified only where the situation is unusual and where the granting of the relief is essential to maintain the *status quo* pending trial of the action" (*Pizer v Trade Union Serv.,* 276 App Div 1071; accord *Powlowski v Wullich,* 81 Misc 2d 895, 903). Clearly, no such showing of unusual circumstances has been made here. It is evident that TSS, which has avoided any possibility of a forfeiture as well as a severe disruption of its business activities by virtue of the *Yellowstone* injunction, does not require the protection of mandatory injunctive relief. Gibbons, J. P., Bracken, Weinstein, Lawrence and Eiber, JJ., concur.