West End Hgts., LLC v Sobrado-Torres (2024 NY Slip Op 50322(U))

[*1]

West End Hgts., LLC v Sobrado-Torres

2024 NY Slip Op 50322(U)

Decided on March 26, 2024

City Court Of Ithaca, Tompkins County

Peacock, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 26, 2024
City Court of Ithaca, Tompkins County

West End Heights, LLC, Petitioners

against
Neraida Sobrado-Torres, Respondent.

Docket No. LT-49759-24

Seth J. Peacock, J.

Background
This action relates to property located at 701 West Court Street, Apt. 509, Ithaca, New York, 14850. The Petitioners filed a Petition asserting a holdover cause of action for a lease allegedly terminated pursuant to the terms of the lease. Although a termination notice dated January 29, 2024 purportedly terminated the lease effective February 9, 2024 pursuant to Exhibit G of the lease, Exhibit G was not attached to the copy of the lease provided in the Petition.

 Elements of a Holdover Proceeding
"[S]ummary landlord-tenant proceedings are 'special proceeding[s] governed entirely by statute and it is well established that there must be strict compliance with the statutory requirements to give the court jurisdiction.'" Matter of Cat Hollow Estates, Inc. v Savoia, 46 AD3d 1293, 1294 (3d Dept 2007).
A holdover summary proceeding under RPAPL § 711 requires that the tenancy has already expired. RPAPL § 711(1). The expiration of the tenancy can, of course, happen by the natural conclusion of the lease term. This is, perhaps, the most common holdover situation. A tenancy can also end earlier, upon the happening of a specified event. Calvi v Knutson, 195 AD2d 828, 830 (3d Dept 1993). In such a case, the lease automatically expires when the event happens, without the landlord electing to terminate the lease or re-enter. TSS-Seedman's, Inc. v. Elota Realty Co., 72 NY2d 1024, 1026-27 (1988). A lease provision which automatically ends the lease once the event happens, without the landlord exercising an option to terminate or re-enter, is known as a "conditional limitation." Id. With a conditional limitation, there is no need for any choice or further act to be done by the landlord.
There are three kinds of provisions which can be considered conditional limitations. Rasch's New York Landlord and Tenant § 23:26. The first kind is a provision that provides for the automatic termination of the lease once an objective contingency happens, such as the destruction of the premises by a natural disaster. S. St. Seaport Ltd. Partnership v Jade Sea Rest., Inc., 151 Misc 2d 725, 727 (Civ Ct, New York County 1991).
The second kind of provision that can be considered a conditional limitation contemplates an event set in motion by the landlord, such as the sale of the premises. Id. It is important to note that in this example, it is the sale of the premises that automatically ends the lease, as opposed to the landlord's option to terminate the tenancy.
The third kind of provision that can be considered a conditional limitation contemplates an event set in motion by the tenant. Id. at 727-28. There seem to be two subsets of this kind of conditional limitation. An example of the first subset is a provision that automatically terminates the lease upon the tenant's breach of a lease provision. Murray Realty Co. v. Regal Shoe Co., 265 NY 332 (1934). Here, the landlord does not exercise any option to terminate the lease; the lease is simply terminated once the tenant breaches the lease provision. But see Kramer v. Amberg, 4 N.Y.S. 613 (C.P. 1889), aff'd, 115 NY 655, 21 N.E. 1119 (1889) ("It has been the law of this state for many years that summary proceedings for the removal of a tenant will not lie where the landlord is seeking to recover possession on account of a breach by the tenant of some condition of the lease.") An example of the second subset is a lease provision that permits the landlord to give, say, a three-day termination notice if the tenant breaches the lease. Here, it is not the breach itself that ends the lease, nor is it even the landlord's option that ends the lease. It is the lapse of time contained in a notice that automatically ends the lease. TSS-Seedman's, Inc., 72 NY2d 1024; Calvi, 195 AD2d at 830. For example, where the lease calls for a three-day termination notice, "it is by the passage of time—the period of time specified in the termination notice—that the lease automatically comes to an end; without service of a notice specifying the date of expiration of the lease there can be no termination and the lease remains in effect." TSS-Seedman's, Inc., 72 NY2d at 1027. In this example, once the landlord sends the notice containing the lapse of time, it is no longer his option that ends the lease. Instead, the lease will automatically end by the passage of the three days contained in the notice.
In contrast to the examples given above, a lease provision might give the landlord the option to re-enter the premises or terminate the tenancy if an event happens, such as the tenant's breach of the lease. In this example, the lease provision does not provide for a termination notice containing a lapse of time, such as a three-day termination notice. The landlord simply has the right to end the lease, often by sending a notice terminating the lease effective immediately. This is not a conditional limitation. It is a "condition subsequent." LLDP Realty Co., LLC v AGHR Enterprises LLC, 44 Misc 3d 716, 718 (Civ Ct, Kings County 2014) (citing Beach v Nixon, 9 NY 35 (1853)). If a condition subsequent gives a landlord the option to re-enter or terminate, the lease survives the tenant's breach and continues until the landlord enforces the end of the lease by re-entry. Lyon v. Hersey, 103 NY 264, 269 (1886). "At common law the right to re-enter, except when entry can be made without force, is simply the right to maintain ejectment [proceedings]." Michaels v. Fishel, 169 NY 381, 389 (1902).
In other words, when a landlord has a mere option to terminate and/or re-enter under a condition subsequent, the lease has not ended until the premises have been surrendered or an ejectment action has happened. The landlord in that situation is not entitled to a holdover summary proceeding because the lease has not yet expired. RPAPL § 711(1) (permitting a holdover summary proceeding only when the tenant continues in possession "after expiration of his term"); Calvi, 195 AD2d at 830-31. For these reasons, a landlord who only has the option to re-enter or terminate the lease only has a cause of action for ejectment under RPAPL article 6; he cannot bring a summary proceeding under RPAPL article 7. Matter of Watervliet Hous. Auth. v Bell, 262 AD2d 810, 811-12 (3d Dept 1999); but see Lonas v. Silver, 201 A.D. 383 (2d Dep't 1922) (finding that landlord's exercise of his option to terminate a lease constituted a conditional limitation, despite citing to unanimously contrary authority).

Failure to Include Exhibit G
Petitioner asserts that the January 29, 2024 notice sent to Respondent was sent pursuant to language contained in Exhibit G. However, as Petitioner concedes, Exhibit G was not attached to the lease that was provided with the Petition. It appears to the Court that Exhibit G was not part of the lease that Respondent agreed to.
Page 8 of the lease documents, which ostensibly lists all of the attachments to the lease, cannot be relied upon as an indicator of what Respondent agreed to. Page 8 lists Exhibits G, N, and O, all of which are missing. Exhibit G was supposed to be page 19 of 37 in the lease documents. It was not even the last page of the petition's exhibits, which might have lead the Court to excuse its absence as a copying error. Furthermore, the Petition's exhibits end with Exhibit M, which is page 37 of 37; Exhibits N and O are conspicuously absent, despite being mentioned on page 8.
Since the January 29, 2024 notice was purportedly sent pursuant to Exhibit G, Exhibit G's absence is a jurisdictional defect and cannot be ignored. In its March 21, 2024 letter to the Court, Petitioner requests to "supplement the lease attached to the petition to include the attached Exhibit G." However, CPLR § 2001 only permits the correction of a omissions that are "technical defects." Matter of Oneida Pub. Lib. Dist. v Town Bd. of Town of Verona, 153 AD3d 127, 129 (3d Dept 2017). CPLR § 2001 does not permit the correction of an omission that is a jurisdictional defect. Id. at 130.

 Exhibit G Contains No Conditional Limitation
Even if the lease Respondent agreed to did include Exhibit G, Exhibit G does not contain a conditional limitation. It contains only a condition subsequent, because it states, "VIOLATION OF THE ABOVE PROVISIONS is grounds for the Landlord to terminate this lease immediately. No notice or opportunity will be given to the Tenant prior to the termination of this lease and Tenant will be served with a 10-day Notice to Vacate" (emphasis added). It is the language about the lease terminating "immediately" that renders this provision a condition subsequent. St. Catherine of Sienna R.C. Church, 44 Misc 3d 8, 10 (App Term, 2d Dept 2014) (lease provision stating, "in the event of a breach thereof, the term herein shall immediately cease and determine at the option of the Landlord as if it were the expiration of the original term" created a condition, and not a conditional limitation, and could not be the basis of a holdover summary proceeding).
The Court is aware that a termination notice is often called a "notice to vacate." When there is a proper conditional limitation, it generally does not matter what the notice is called. If a conditional limitation states that the lease shall terminate at the end of the period of time contained in a "notice to vacate," the passage of that time can indeed end the lease. Calvi, 195 AD2d 828. Exhibit G, however, contains no conditional limitation. Instead, Exhibit G lets the landlord "terminate this lease immediately"; the lease is not terminated by lapse of the 10 days contained in the Notice to Vacate.
It must be noted that, outside the context of a conditional limitation, vacating a premises is not the same thing as terminating a lease. RPL § 227-e, for example, requires landlords to mitigate damages by searching for a new tenant "if a tenant vacates a premises in violation of the terms of the lease." That statute states, "the new tenant's lease shall, once in effect, terminate the previous tenant's lease." RPL § 227-e (emphasis added). In other words, an old lease can continue after the tenant vacates the premises, and might not terminate until the landlord rents the premises to a new tenant. RPL § 227-e makes it clear that vacating a premises and terminating a lease are not synonymous. While a proper conditional limitation may nonetheless [*2]let a "notice to vacate" function as a termination notice, Exhibit G contains no conditional limitation.
Thus, though the January 29, 2024 notice purported to terminate the lease by the passage of time, such a notice was not authorized by Exhibit G. The Court finds that the "10-day Notice to Vacate" authorized by Exhibit G, when read with the immediate termination language, cannot mean a termination notice containing a lapse of time. The immediate termination language of Exhibit G, assuming it was part of the lease, gives Petitioner only the right to re-enter. Where a landlord has only the right to re-enter, ending the tenancy "requires some act to be done—such as making an entry—to effect it." Lyon, 103 NY at 269. As stated earlier, "At common law the right to re-enter, except when entry can be made without force, is simply the right to maintain ejectment [proceedings]." Michaels, 169 NY at 389. With Exhibit G's immediate termination language in mind, Exhibit G's Notice to Vacate can only be interpreted as a request for the tenant to surrender the premises peaceably.

 The Valid Conditional Limitations In The Lease
To be sure, the lease contains two conditional limitations that provide for the automatic termination of the tenancy upon the happening of a specified event "without requiring any act to be done by any one." Lyon, 103 NY at 269. These provisions are found at paragraph 9(B) and paragraph 20.
Paragraph 9(B) of the lease provides for a thirty-day termination notice to be sent, but only after an initial notice to cure is first sent pursuant to paragraph 9(A). Paragraph 9(B) is a valid conditional limitation. It terminates the lease via a lapse of time. Calvi, 195 AD2d 828. However, the January 29, 2024 notice sent to Respondent was not sent pursuant to paragraph 9(B).
Paragraph 20 provides for a notice that terminates the lease for any criminal or unlawful activity "which do not cease within 10 days of such notice," without any "further notice or opportunity" prior to termination of the lease. In other words, paragraph 20 provides for an automatic termination of the lease if the tenant fails to cure her breach within 10 days of the notice, without requiring any further option or election of the landlord. See Murray Realty Co., 265 NY 332. This is a valid conditional limitation, because a "lease may contain a conditional limitation which permits it to be terminated if the tenant fails to cure ." Post v 120 E. End Ave. Corp., 62 NY2d 19, 27 (1984).[FN1]
However, the January 29, 2024 notice was not sent pursuant to paragraph 20 of the lease.[FN2]

 Conclusion
Because the January 29, 2024 termination notice was was not authorized by any provision of the lease Respondent signed, it was invalid and the lease was never terminated. [*3]Without prior expiration of the lease, Petitioners are not entitled to bring a holdover summary proceeding under RPAPL § 711(1).
Assuming Exhibit G was attached to the lease, Petitioners might be able to pursue an ejectment action under RPAPL article 6. However, this would have to be done in Supreme Court. "City Court is a court of limited jurisdiction (see, UCCA 201) and neither RPAPL article 6 nor UCCA article 2 authorizes City Court to entertain an action for ejectment." Watervliet Hous. Auth., 262 AD2d at 812.
The Petition is DISMISSED.
This constitutes the Decision and Order of the Court entered upon notice to both parties.
SO ORDERED.
Dated: March 26, 2024
Seth J. Peacock
Ithaca City Court Judge

Footnotes

Footnote 1:Note, however, that RPAPL § 753(4) imposes a thirty day stay of the issuance of a warrant if a summary proceeding is based on a breach of the lease. The tenant may cure the breach during this thirty day stay. But see RPAPL § 753(3). Regardless, this issue is academic in this case, since Petitioner is not entitled to bring a holdover proceeding.

Footnote 2:Even if notices had been sent pursuant to paragraph 20 of the lease, Petitioners would have to allege that Respondent's criminal or unlawful activities did "not cease within 10 days of such notice" and that the lease therefore expired.